Appellants Susan Henley and North Glenellen Blockwatch appeal from the decision of the Mahoning County Common Pleas Court which held in favor of appellees Beatitude House, St. Brendan's Church, and the City of Youngstown's Board of Zoning Appeals. For the following reasons, the trial court's judgment is reversed in part.
 I. STATEMENT OF FACTS
Beatitude House is a nonprofit corporation operated by Ursuline nuns who run a job training program called The Potter's Wheel and supervise a housing program for homeless and abused women known as Transitional Housing. Beatitude House decided to open a branch of its operation on the property of St. Brendan's Church, which is located at 145 North Glenellen Avenue on the west side of Youngstown. The plan was to construct five apartments inside an old convent which formerly housed fifteen nuns. One of the apartments would serve as the director's residence; the other four would house the participating females and their minor children. The Potter's Wheel would also be opened in the former convent to provide vocational training to the residents and others.
In order to receive federal funding, Beatitude House had to submit a letter from the zoning office to prove that its program was permitted to be operated from the selected locale. Sister Margaret Scheetz communicated with the zoning office and was told she would have to apply for a permit pursuant to Article IX of the Youngstown Zoning Ordinance. The application was made, but a zoning officer denied the permit. Beatitude House requested a public hearing before the Board of Zoning Appeals. The notice of public hearing was sent to neighbors of St. Brendan's Church and stated that the basis of the appeal was that Beatitude House's proposed use of the former convent is an accessory use. The hearing was held on February 18, 1997, where various people spoke for and against issuance of the permit.
After the hearing, the City Law Director researched the following issues for the zoning board: (1) what is the definition of accessory use and (2) does the Religious Freedom Restoration Act of 1992 (RFRA) apply to this appeal. On February 25, 1997, the Board voted unanimously in favor of Beatitude House "based on Federal and State law." The next day, the Board informed Sister Margaret that an accessory use permit would be granted. Appellants filed a timely notice of appeal in the Common Pleas Court pursuant to R.C. 2506. Soon thereafter, the United States Supreme Court declared the RFRA unconstitutional.
On September 25, 1997, the magistrate filed findings of fact and conclusions of law which held in favor of appellees. The magistrate upheld the Board's decision on essentially two grounds: (1) the transitional housing program is an acceptable accessory use of the church's property; (2) (a) even if RFRA is unconstitutional, the compelling state interest test is still applicable to zoning laws which affect churches, and (b) the compelling state interest test is not met in this case. Appellants filed timely objections. On November 17, 1997, the trial court: adopted the magistrate's report. The within timely appeal followed.
 II. RELEVANT PORTIONS OF THE ZONING ORDINANCE
Article I of the Youngstown Zoning Ordinance, which contains definitions, provides:
 "Section 12.10 — Accessory Use or Building. A use customarily incidental and subordinate to the principal use or building and located on the same lot with such principal use or building.
* * *
 Section 12.110 — Dwelling Unit. A building or portion thereof providing complete living facilities for a single housekeeping unit.
* * *
 Section 12.130 — Dwelling. Single Family. A building containing one (1) housekeeping unit only, in which roomers or boarders are prohibited.
* * *
 Section 12.400 — Use, Principal Use. The primary purpose for which a lot or the main building thereon is designed, arranged, or intended to be used, in accordance with the provisions of these regulations."
Article IV lists the permitted uses of property in an R-7.2 district such as the one in which St. Brendan's Church is located. The purpose of this district is for "maintaining and protecting low-density single-family residential areas which have a density of not more than six single-family dwellings per net acre." Among the permitted uses of land in an R-7.2 district are:
 "Accessory uses and structures incidental to any permitted residential use, such as garages, greenhouses or toolsheds.
 Assembly halls, coliseums, gymnasiums and similar structures when part of a place of worship (with special controls).
* * *
 Churches and other places of worship including parsonage or rectory (with special controls).
* * *
Dwellings, detached single-family."
Article VII is entitled Supplementary Regulations and provides in pertinent part:
 "Section 80: REGULATION OF ACCESSORY BUILDINGS IN RESIDENTIAL DISTRICTS
 Purpose: It is the purpose of the Section to regulate accessory buildings in residential districts in order to promote the public health, safety and welfare. It is the intent of the Section to permit buildings that are compatible with principal uses and harmonious with uses upon adjacent properties.
 Definition: In residential districts, `Accessory Building' means a structure constructed or installed on, above, or below the surface of a parcel, which is located on the same lot as a principal use or structure, and which is subordinate to or serves the principal use or structure, [and] is subordinate in area to the principal use or structure. "Accessory Building' includes any building of a subordinate nature attached to or detached from a principal structure or use, including but not limited to sheds, garages and greenhouses.
 GENERAL REQUIREMENTS
 In residential districts, except as otherwise provided in this Ordinance, an accessory building shall be permitted in association with a principal use of structure provided that:
* * *
 2. It shall not contain or be used as a dwelling unit." (Emphasis added in bold).
 III. ASSIGNMENT OF ERROR
Appellants' sole assignment of error contends:
 "THE TRIAL COURT ABUSED IT'S [sic] DISCRETION BY FAILING TO FIND DECISION OF THE CITY OF YOUNGSTOWN BOARD OF ZONING APPEALS ILLEGAL AS THE PROPOSED ACCESSORY USE IS PROHIBITED IN RESIDENTIAL DISTRICTS PURSUANT TO SECTION 80 OF ARTICLE VII OF THE CITY OF YOUNGSTOWN ZONING ORDINANCE."
Appellants argue that even if Transitional Housing is considered an accessory use, it is an accessory use that is prohibited by Section 80 of Article VII because an accessory building may not be used as a dwelling unless otherwise allowed by the zoning ordinance. According to appellees, Section 80 was enacted to keep people from living in certain accessory buildings such as sheds, garages, or greenhouses. They emphasize that the building they wish to remodel into five apartments was previously a dwelling unit for fifteen nuns. The magistrate and trial court failed to specifically address appellants' argument about Section 80.
We agree with appellees that a church is more than just a place of worship. We agree that social programs of a church, such as the ones in this case, are accessory uses in that they are customarily incidental to the principal use. Nevertheless, the permit to operate Transitional Housing appears to have been issued contrary to the plain meaning of the Youngstown Zoning Ordinance. St. Brendan's Church is located in an R-7.2 district which is established for the purpose of maintaining low-density single-family residences. A church is a specifically permitted use of land in an R-7.2 district. A church can construct a rectory or a parsonage in an R-7.2 district. A church in this district can also build an assembly hall, a gymnasium, a coliseum, or similar structure. Accessory uses are permitted. These accessory uses may occur in accessory buildings. However, accessory buildings cannot contain dwelling units in any residential district unless the ordinance specifies an exception. Appellees do not demonstrate where there exists an exception for apartments on church property.
An ordinance should not be interpreted unless it is ambiguous.Cline v. Ohio Bur. of Motor Veh. (1991), 61 Ohio St.3d 93, 96;Meeks v. Papadopulos (1980), 62 Ohio St.2d 187, 190. If a plain reading of law exists, then it is to be applied without interpretation. Id. Still, appellees urge us to interpret the ordinance instead of simply applying it. The practical effect of appellees proposed interpretation would be that every church in every type of district could provide or allow a lessee to provide dwelling units to people who are in need. Although sheltering the homeless and abused is an extremely worthy cause and is a central tenet of many religions, it must be done where it is permitted. To permit all churches to open dwelling units in their accessory buildings would defeat one of the prime purposes of zoning, e.g.
to maintain certain density levels in designated neighborhoods. Accordingly, the Youngstown ordinance mandates that dwelling units not occupy accessory buildings in residential neighborhoods unless specifically exempted. Here, not only are the dwelling units at issue not exempted from the general prohibition, but the ordinance states that apartments are not permitted in an R-7.2 district. The Youngstown Zoning Ordinance may be amended by the City Council and the City Planning Commission pursuant to Article XI. Until amendment occurs to allow more exceptions to the ban on living in accessory buildings or to allow church-affiliated apartments as a permissible use of land in an R-7.2 district, St. Brendan's Church may not allow Beatitude House to remodel its former convent into apartments.
The fact that the accessory building in question formerly housed fifteen nuns is not relevant. The convent was built in 1954 and was occupied by nuns for thirty-eight years without complaints by neighbors being registered with zoning officials. The convent existed before Section 80 of Article VII was amended in 1990, and the convent closed in 1993. Moreover, it is possible that the zoning board interprets "churches and other places of worship" to include convents as part of the principal use. However, appellees do not argue that Transitional Housing is a principal use of church property. As such, appellants' argument has merit.
In anticipation of the above unfavorable ruling, appellees next contend that to deny them the permit would be to deny them the free exercise of religion in violation of the First Amendment to the United States Constitution. Appellees argue that enforcement of the ordinance against them is unconstitutional because the City cannot show that a compelling government interest outweighs the substantial burden placed upon free religious exercise. In Employment Div., Dept. of Human Resourcesof Oregon v. Smith (1990), 494 U.S. 872, the Supreme Court rejected this strict scrutiny standard as a way of adjudicating religiously motivated challenges to neutral, generally applicable laws.
In an attempt to overturn Smith, Congress enacted the Religious Freedom Restoration Act (RFRA). The RFRA provided that generally applicable laws must be the least restrictive alternative to further a compelling state interest if they substantially burden a person's exercise of religion. Section 2000bb, Title 42, U.S. Code. Nevertheless, in City of Boerne v.P.F. Flores (1997), 521 U.S. 507, the Supreme Court declared that the RFRA is unconstitutional and beyond the power of Congress. Strict scrutiny remains the test only in cases when there exists an individualized government assessment of the reasons for the allegedly religious conduct, such as in unemployment cases. Id.
See, also. Smith, supra. This is because the standard in unemployment cases is whether a person quit a job for "good cause," which results in highly individualized exemptions.
Appellees claim that the Youngstown Zoning Ordinance contains similar individualized exemptions and point to the categories of variances, prior non-conforming uses, and accessory uses. However, because appellees did not seek a variance or a permit for prior non-conforming use, we need not deal with these categories of zoning.[1] Appellees sought and received an accessory use permit which is not a zoning exemption but a type permitted use of land.
Moreover, accessory use is defined by the ordinance. Obtaining an accessory use permit does not entail an individualized assessment by a government employee who evaluates the validity of religious-based conduct as in the aforementioned unemployment context. There is no case-by-case government appraisal to determine whether different permit applicants may build dwelling units in their accessory buildings. The standard is not that a landowner can build apartments in an R-7.2 district if it is for a "good cause" as is the standard in unemployment cases cited by appellees. The standard is that accessory buildings shall not be used as dwellings unless otherwise permitted and that an R-7.2 district shall not contain apartment buildings. Thus, we see no analogy between this case and the unemployment cases referenced in Smith and Boerne.
In Boerne, a church had to turn worshipers away due to overcrowding. As a result, the church planned to enlarge its building; however, permits for changing historical landmarks had to be preapproved by a commission. The commission denied the permit and the church appealed. As aforementioned, the church lost because there is no private right to ignore generally applicable laws. Boerne was a zoning case and the Supreme Court held that strict scrutiny was inapplicable. If Boerne is not governed by strict scrutiny, then neither is the case sub judice. The Youngstown Zoning Ordinance does not burden free exercise of religion on its face or have underlying motives to suppress free exercise. Thus, the ordinance does not unconstitutionally suppress appellees' free exercise of religion. Appellants' assignment of error is sustained.
For the foregoing reasons, because appellants' sole assignment of error dealt with the Transitional Housing program, only the part of the accessory use permit dealing with Transitional Housing is reversed. The part of the permit allowing The Potter's Wheel to operate was not contested in this appeal; therefore, that permit remains in effect. Accordingly, the judgment of the trial court is reversed in part.
Cox, P.J., dissents; see dissenting opinion.
Waite, J., concurs.
APPROVED:
 _________________________________ JOSEPH J. VUKOVICH, JUDGE
[1] Furthermore, "[a] non-conforming use may not be reestablished, after being voluntarily discontinued for two years or more." Article VII, Section 76.1 of the Youngstown Zoning Ordinance. The convent closed in 1993. Thus, only until 1995 could a substituted non-conforming use permit be sought.